63 Civ. 3106    United States of America    vs    Association of Casualty & Surety Co et al 63 Civ 31

| DATE | PROCEEDINGS | Date Order or Judgment Noted |
|---|---|---|
| ct.23 63 | Filed complaint and issued summons | |
| ct. 23-63 | Filed consent to enter final judgment after 30days, as indicated | |
| ov. 27-63 | Filed final judgment on consent enjoining the sponsoring of appraisers of insured automotive damage and attempting to control the proces charged by automotive repair shops--McLean,J.--judgment entered--Clerk | ent.11-27-63 |

FILED

Feb 23, 2016

FEB 2 3 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**16-cv-2518**
**Judge Sara L. Ellis**
**Magistrate Judge Maria Valdez**

**CIVIL DOCKET**
**UNITED STATES DISTRICT COURT**

63 C. v. 3106

Jury demand date:

D. C. Form No. 106 Rev.

| TITLE OF CASE | ATTORNEYS |
|---|---|
| | For plaintiff: |
| UNITED STATES OF AMERICA | John J Galgay, Attorney, Dept. of Justice |
| | 42 Broadway, NYC |
| VS | |
| ASSOCIATION OF CASUALTY AND SURETY COMPANIES | |
| AMERICAN MUTUAL INSURANCE ALLIANCE | |
| NATIONAL ASSOCIATION OF MUTUAL CASUALTY COMPANIES | |
| | For defendant: |

| STATISTICAL RECORD | COSTS | | DATE | NAME OR RECEIPT NO. | REC. | DISB. |
|---|---|---|---|---|---|---|
| J.S. 5 mailed x | Clerk | | | | | |
| J.S. 6 mailed ✓ | Marshal | | | | | |
| Basis of Action: Sherman Act | Docket fee | | | | | |
| | Witness fees | | | | | |
| Action arose at: | Depositions | | | | | |

Form No. 696

No. _____

# IN THE _____ DISTRICT _____ COURT

## OF THE UNITED STATES

FOR THE

SOUTHERN DISTRICT OF NEW YORK

_____ of _____

UNITED STATES OF AMERICA,

Plaintiff,

*vs.*

ASSOCIATION OF CASUALTY AND

SURETY COMPANIES; et al

Defendants

C O M P L A I N T

JOHN J. GALGAY
Attorney, Department of Justice
New York Field Office
112 Broadway, Room 500
New York, N.Y. - 10004
COrtlandt 7-7100

Filed _____, 19___

_____ Clerk.

By _____ Deputy.

7—754

U. S. GOVERNMENT PRINTING OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,     )
)
         Plaintiff,   )
)
         v.          )  Civil No. 3106
)
ASSOCIATION OF CASUALTY AND  )  Filed:
SURETY COMPANIES; AMERICAN    )
MUTUAL INSURANCE ALLIANCE;     )
and NATIONAL ASSOCIATION OF   )
MUTUAL CASUALTY COMPANIES,    )
)
        Defendants.   )

U.S. DISTRICT COURT FILED OCT 29 1963 S. D. OF N.Y.

## C O M P L A I N T

The United States of America, by its attorneys, acting under the direction of the Attorney General of the United States, brings this civil action to obtain equitable relief against the above named defendants, and complains and alleges as follows:

I

### JURISDICTION AND VENUE

1. This complaint is filed and these proceedings are instituted under Section 4 of the Act of Congress of July 2, 1890, c. 647, 26 Stat. 209 (15 U.S.C. § 4), as amended, entitled "An Act to protect trade and commerce against unlawful restraints and monopolies," commonly known as the Sherman Act, in order to prevent and restrain continuing violations by the defendants, as hereinafter alleged, of Sections 1 and 3 of the Sherman Act.

2. The defendant Association of Casualty and Surety Companies transacts business and is found within the Southern District of New York.

II

### DEFINITIONS

3. As used herein:

    (a) "Member Companies" shall be deemed to mean member companies of any of the defendant associations;

(b)　"Automobile" shall be deemed to mean a self-propelled vehicle used for the transportation of persons or property on the highway;

(c)　"Automobile property damage liability insurance" shall be deemed to mean insurance against loss arising out of the insured's legal liability for damages to the property of others resulting from the ownership, maintenance or use of an automobile;

(d)　"Automobile physical damage insurance" shall be deemed to mean insurance covering damages or loss to the automobile of the insured resulting from collision, fire, theft, and other perils;

(e)　"Automobile property insurance" shall be deemed to mean automobile property damage liability insurance and automobile physical damage insurance;

(f)　"Direct premiums earned" shall be deemed to mean that part of the premiums applicable to the expired part of the policy;

(g)　"Direct losses incurred" shall be deemed to mean the amount of loss paid and outstanding;

(h)　"Insured" shall be deemed to mean the party to whom or on behalf of whom the insurer agrees to pay losses under the insurance contract;

(i)　"Insurer" shall be deemed to mean the party to the insurance contract who promises to pay losses;

(j)　"Adjustment" shall be deemed to mean the process of determining the amount payable by the insurer to an insured or other claimant under the insurance contract, and the rights and obligations incident thereto;

2

(k)  "Settlement" shall be deemed to mean the discharge
of an obligation of an insurer to an insured or other
claimant under an insurance contract as determined
by adjustment of a claim;

(l)  "Adjuster" shall be deemed to mean a person or firm
who represents the insurer in the adjustment and
settlement of claims with insureds or other claimants;

(m)  "Automobile material damage" shall be deemed to mean
any damage to an automobile resulting from collision,
fire, or other perils for which automobile property
insurance is available;

(n)  "Repair shop" shall be deemed to mean a person or
firm engaged in automobile material damage repair;

(o)  "Agreed price" shall be deemed to mean a commitment
by a repair shop to undertake to complete and guarantee
automobile material damage repairs in consideration
of the amount of an appraiser's estimate.

III

DEFENDANTS

4.  Association of Casualty and Surety Companies (hereinafter
referred to as "ACSC"), which maintains its principal office at
110 William Street, New York, New York, is made a defendant herein.
ACSC is an unincorporated trade association whose membership is
composed of 133 stock insurance companies doing business in the
United States.

5.  American Mutual Insurance Alliance (hereinafter referred
to as "AMIA"), a corporation organized and existing under the laws
of the State of Illinois, with its principal office at 20 North Wacker
Drive, Chicago, Illinois, is made a defendant herein.  AMIA is a trade
association whose membership is composed of 106 mutual insurance
companies doing business in the United States.

3

6. National Association of Mutual Casualty Companies (herein-
after referred to as "NAMCC"), a corporation organized and existing
under the laws of the State of Illinois, with its principal office
at 20 North Wacker Drive, Chicago, Illinois, is made a defendant
herein. NAMCC is a trade association whose membership is composed
of 26 mutual insurance companies doing business in the United States.
All members of the NAMCC which write automobile property insurance are
members also of AMIA.

IV

CO-CONSPIRATORS

7. Various other persons, firms, organizations and corporations,
including but not limited to member companies, sponsored appraisers,
and repair shops, not made defendants herein have participated as co-
conspirators with the defendants in the offense hereinafter charged
and have performed acts and have made statements in furtherance thereof.

V

NATURE OF TRADE AND COMMERCE

8. An important branch of the insurance industry is automobile
property insurance which provides coverage for property losses arising
out of the ownership or use of automobiles. This coverage is provided
by two types of insurance: Automobile property damage liability insurance
and automobile physical damage insurance.

9. Total direct premiums earned in the United States by all
insurance companies in 1960 for automobile property insurance amounted
to approximately $3,327,815,566. Of the total direct premiums earned
in 1960, member companies accounted for approximately 35.5 percent, or
approximately $1,183,642,376. Total direct losses incurred in the
United States in 1960 by all insurance companies under automobile
property insurance amounted to approximately $1,787,276,826. Of the
total direct losses incurred in 1960, member companies accounted for
approximately 35.2 percent, or $627,948,160.

4

10. Automobile property insurance is sold by insurance companies, including member companies, throughout the United States, and in the District of Columbia, by the issuance of an insurance contract, commonly called a policy, in exchange for an amount of money, commonly called premiums. The automobile property insurance business involves a continuous and indivisible stream of intercourse among states composed of collections of premiums, payments of policy obligations, and documents and communications essential to the negotiation and execution of policy contracts and the adjustment and settlement of claims.

11. A vital phase of the automobile property insurance business is the adjustment and settlement of claims. A great majority of the claims under automobile property insurance policies are for automobile material damage. It is the general practice for member companies to employ a claim representative, commonly referred to as a claim manager, to supervise and be responsible for the adjustment and settlement of claims, including those under automobile property insurance, arising in the territory assigned to him. An integral part of the process of adjustment and settlement of claims arising under automobile property insurance is determining the cost of repairing damaged automobiles. One way of accomplishing this is for the claim manager or adjuster to engage an appraiser to prepare an estimate of the repair cost.

12. An appraiser operates by examining the damaged automobile to determine the damage covered by automobile property insurance, the repairs that must be made, the time it will take to make them and thereafter securing an agreed price from a repair shop. The agreed price is transmitted by the appraiser to the claim manager or adjuster, and is used as a basis for adjusting and settling the claim. The process of adjustment and settlement of claims includes a continual transmission to and from and between home offices of insurance companies, claim managers, adjusters, appraisers, and claimants located in different

states of the United States and the District of Columbia of claim forms, statements, reports, directives, checks and drafts, documents and communications of various kinds, all of which are essential to the adjustment and settlement of claims.

13. A major part of direct losses incurred under automobile property insurance is attributable to automobile material damage repair costs; and a major part of the automobile material damage repair business is the repair of automobile damage covered by automobile property insurance. The automobile material damage repair business consists of the repair and replacement of automobile parts and is engaged in by repair shops located in all states of the United States and the District of Columbia. The price charged by repair shops for automobile material damage repairs consists of a labor charge, which is an hourly rate applied to the time taken to repair or replace parts, and a parts charge for any parts which are used to replace damaged parts on the automobile. Automobile parts are manufactured by automobile manufacturers and others in plants located in various states of the United States and are sold and shipped by them to jobbers, wholesalers and dealers located in the District of Columbia and states other than the states in which they were manufactured for resale to repair shops for sale and use in the repair of damaged automobiles.

## Background of the Conspiracy

14. The ACSC has had for many years a committee known as the Advisory Committee of the Claims Bureau, sometimes referred to as the Claims Bureau Advisory Committee, which is composed of approximately 18 claims executives of member companies. The NAMCC has had for many years a committee known as the Claims Executive Committee which is composed of approximately 8 claims executives of member companies. It was and is the function of these committees to consider on behalf of their respective associations policies and programs relating to

claims administration. An additional function of the Advisory Com-
mittee of the Claims Bureau of the ACSC is to supervise the operations
of and formulate policies for the Claims Bureau, a department of the
ACSC. The Claims Bureau, which has a large administrative staff, main-
tains its headquarters at 110 William Street, New York, New York, and
also has several regional offices located throughout the United States.
The function of the Claims Bureau is to aid in claims administration.

15. Beginning in or about 1940, the Advisory Committee of the
Claims Bureau of the ACSC and the Claims Executive Committee of the
NAMCC began to hold joint meetings. These meetings were soon formalized
into regular joint sessions and the group became known as the Joint
Claims Committee and later the Combined Claims Committee (hereinafter
referred to as "CCC"). These two committees were designated by their
respective defendant associations to represent the interests of member
companies on the CCC. The purpose and function of the CCC was and is
to provide a common forum to consider policies and programs relating
to claims administration. In 1962, by resolution of the governing
boards of the defendants, the Claims Executive Committee of the NAMCC
was designated to represent AMIA on the CCC.

16. On March 12, 1942 the CCC passed a resolution which provided
for the organization of Casualty Insurance Claim Managers' Councils
(hereinafter referred to as "Councils") in various areas of the United
States to act as sub-committees of and under the direction and control
of the CCC, then known as the Joint Claims Committee. These Councils
are each chartered by the CCC. Each Council's membership is composed
of those member companies which have a full time, salaried claim rep-
resentative in the area under that Council's jurisdiction. The primary
purpose and function of the Councils are to permit field claim managers
of member companies to consider local problems of claims administration,
including those arising under automobile property insurance. At the
present time there are approximately 80 Councils located throughout
the United States, including the District of Columbia.

17.   In the Fall of 1946, the Pittsburgh, Pennsylvania Council
met to consider what collective action might be taken by its members
to depress and control automobile material damage repair costs in the
Pittsburgh area.   In March 1947, the Pittsburgh Council adopted a
program, subsequently known as the Independent Appraisal Plan (herein-
after referred to as the "Plan"), intended to depress and control
automobile material damage repair costs.   The CCC in December 1948
and again in July 1949 formally adopted the Plan and since that time
has sponsored it and actively promoted its expansion and use.   Since
its inception the Plan, under the supervision and direction of the CCC,
and administered by the Claims Bureau of the ACSC and the Councils, has
become a nationwide operation.   By the end of 1961, it was in effect
in 177 localities throughout the United States, including the District
of Columbia.   The CCC requires uniformity in the operation of the Plan
throughout the United States.

18.   Under the Plan, a Council in collaboration with the CCC, selects
and sponsors an individual or partnership to act as appraiser to make
determinations of automobile material damage costs for use in the adjust-
ment and settlement of claims.   Prior to the selection of a sponsored
appraiser, Council members are instructed to submit to the Council the
volume of business they anticipate giving the appraiser in the area for
which he is to be sponsored.   The sponsored appraiser is required to
employ sufficient personnel to handle any volume of appraisal business
in his territory.   Most such appraisers have several employees.   The
sponsored appraiser is required to confine his operations to the terri-
tory for which he is sponsored by the Council or CCC.   The fees which
the sponsored appraiser charges are subject to the approval of the
sponsoring Council or CCC.   The sponsored appraiser is required to
conform his operations to the principles of the Plan and to assure
his compliance, his operations are supervised and controlled by the
sponsoring Council and the Claims Bureau on behalf of the CCC.   The
Plan calls for exclusive use of the sponsored appraiser by member

8

companies and the sponsored appraiser is urged to solicit business from others in order to increase the effectiveness of the Plan.

19. Included among the means used under the Plan to control and depress automobile material damage repair costs are the following: (1) to repair rather than replace damaged parts; (2) to replace damaged parts by used rather than new parts; (3) to obtain discounts on new replacement parts; (4) to establish strict labor time allowances by the sponsored appraisers; and (5) to obtain the lowest possible hourly labor rate.

20. The Plan calls for the sponsored appraiser to arrange for a number of repair shops to agree to make automobile material damage repairs based upon his estimate without the repair shop first examining the damaged automobile. In those situations in which the damaged automobile is not already in the possession of a repair shop, the sponsored appraiser will recommend any of these repair shops to the adjuster or claim manager. In those instances where a particular repair shop in which the damaged automobile is located will not agree to make repairs based upon the sponsored appraiser's estimate, the Plan provides that the sponsored appraiser shall inform the adjuster or claim manager of the names of those repair shops which will accept his estimate and that the adjuster or claim manager will then, when possible, have the damaged automobile repaired by one of the repair shops which have agreed to accept the sponsored appraiser's estimate. It is seldom that a claim is settled at a higher figure than the sponsored appraiser's estimate.

21. The nationwide application of the Plan involves a continuous intercourse among the states composed of memoranda, correspondence, directives and other communications to and from and between the CCC, defendants, Claims Bureau, member companies, Councils and sponsored appraisers.

VI

OFFENSES CHARGED

22.  Beginning in or about 1947, and continuing up to and includ-
ing the date of the filing of this complaint, the defendants and co-
conspirators have engaged in a combination and conspiracy in unreasonable
restraint of the aforesaid trade and commerce in the adjustment and
settlement of automobile property insurance claims, the automobile
material damage appraisal business and the automobile material damage
repair business, in violation of Sections 1 and 3 of the Sherman Act.
Defendants are continuing and will continue said offenses unless the
relief herein prayed for is granted.

23.  The aforesaid combination and conspiracy has consisted of
a continuing agreement and concert of action among the defendants and
co-conspirators to eliminate competition among member companies in the
adjustment and settlement of automobile property insurance claims,
among appraisers and among repair shops, in order to control and depress
automobile material damage repair costs through boycott, coercion and
intimidation of repair shops.

24.  Pursuant to and in effectuation of the aforesaid combination
and conspiracy the defendants and co-conspirators did those things
which, as hereinbefore alleged, they agreed to do and, among others,
did the following things:

      (a)   Refused to recognize or sponsor more than one appraiser
in a territory designated by a Council or the CCC;

      (b)   Coerced sponsored appraisers to operate only in the
territories in which they are sponsored;

      (c)   Induced member companies to channel their automobile
material damage appraisal business to the sponsored
appraiser and boycott other automobile material
damage appraisal businesses;

10

(d) Encouraged the use of sponsored appraisers by others to increase the effectiveness of the Plan;

(e) Required sponsored appraisers to conform their operations to the Plan and withdrew or threatened to withdraw the sponsorship of appraisers who failed to do so;

(f) Required fees charged by sponsored appraisers to be approved by Councils or the CCC;

(g) Induced member companies to refuse to settle a claim for an amount greater than a sponsored appraiser's estimate of the automobile material damage repair costs; and

(h) Induced member companies to channel automobile material damage repair business to those repair shops which will, and boycott those repair shops which will not:

  (1) Accept the sponsored appraiser's estimate as to the cost of repairs;

  (2) Give a price discount on replacement parts;

  (3) Maintain hourly labor rates at a figure which is considered the lowest possible rate in the area; and

  (4) Accede to the sponsored appraiser's determination of time allowances.

VII

EFFECTS

25    The aforesaid offenses have had, among others, the following effects:

(a) Elimination of competition in the adjustment and settlement of automobile property insurance claims, in the automobile material damage appraisal business and in the automobile material damage repair business;

(b) Non-sponsored appraisers engaged in or desiring to engage in the automobile material damage appraisal business have

11

been foreclosed from a substantial segment of the business;

(c) Repair shops which refuse to accept the sponsored appraisers' estimates have been foreclosed from a substantial segment of the automobile material damage repair business; and

(d) Prices charged by repair shops have been subjected to collective control and supervision by defendants and co-conspirators.

P R A Y E R

WHEREFORE, the plaintiff prays:

1. That the aforesaid combination and conspiracy be adjudged and decreed to be in violation of Sections 1 and 3 of the Sherman Act.

2. That each of the defendants, their officers, directors, agents, and employees, and all committees or persons acting or claiming to act on behalf of the defendants or any of them, be perpetually enjoined from continuing to carry out, directly or indirectly, the aforesaid combination and conspiracy to restrain interstate trade and commerce in the adjustment and settlement of automobile property insurance claims, the automobile material damage appraisal business and the automobile material damage repair business; and that they be perpetually enjoined from engaging in or participating in practices, contracts, agreements, or understandings, or claiming any rights thereunder, having the purpose or effect of continuing, reviving, or renewing the aforesaid offense or any offenses similar thereto.

3. That each of the defendants be enjoined from, either individually or in concert with others: (1) sponsoring or preferentially dealing with any appraiser; (2) boycotting any appraiser; (3) exercising any control over or influence upon the activities of any appraiser; (4) channeling or attempting to channel automobile material damage repair business to any repair shop or type of repair shop; (5) boycotting any repair shop or type of repair shop; or (6) coercing any repair shop to conform its prices for repair work or parts to the estimates of any appraiser or otherwise influencing the prices for repair work or parts.

4. That each of the defendants be ordered to amend its by-laws to require each of its member companies to refrain from acting in concert with any other companies in: (1) sponsoring or preferentially dealing with any

12

appraiser; (2) boycotting any appraiser; (3) exercising any control over or influence upon the activities of any appraiser; (4) channeling or attempting to channel automobile material damage repair business to any repair shop or type of repair shop; (5) boycotting any repair shop or type of repair shop; (6) coercing any repair shop to conform its prices for repair work or parts to the estimates of any appraiser or otherwise influencing the prices for repair work on parts; and to make compliance with such requirements a condition of membership.

5.    That pursuant to Section 5 of the Sherman Act an order be made and entered herein requiring defendants AMIA and NAMCC to be brought before the Court in this proceeding and directing the Marshal of the Northern District of Illinois to serve summons upon AMIA and NAMCC.

6.    That the plaintiff have such other and further relief as the nature of the case may require and the Court may deem just and proper.

7.    That the Plaintiff recover the costs of this suit.


Dated:    New York, New York
          October 22nd, 1963.


_____
ROBERT F. KENNEDY
Attorney General

_____
WILLIAM H. ORRICK, JR.
Assistant Attorney General

_____
BADDIA J. RASHID
Attorney, Department of Justice

_____
JOHN H. WATERS

_____
WILLIAM H. ROWAN

Attorneys, Department of Justice

Form No. 680

No. _____

# IN THE _____ DISTRICT _____ COURT

## OF THE UNITED STATES

FOR THE

SOUTHERN DISTRICT OF NEW YORK

of _____

_____

UNITED STATES OF AMERICA,

Plaintiff,

*vs.*

ASSOCIATION OF CASUALTY AND
SURETY COMPANIES; et al

Defendants

_____

STIPULATION and PROPOSED

FINAL JUDGMENT

_____

JOHN J. GALGAY
Attorney, Department of Justice
New York Field Office
42 Broadway, Room 500
New York, N.Y.- 10004
COrtlandt 7-7100

_____

Filed _____, 19 _____

_____, Clerk.

By _____, Deputy.

7-254          U. S. GOVERNMENT PRINTING OFFICE

U.S.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                  Plaintiff,

      v.

ASSOCIATION OF CASUALTY AND SURETY
COMPANIES, AMERICAN MUTUAL INSURANCE
ALLIANCE and the NATIONAL ASSOCIATION
OF MUTUAL CASUALTY COMPANIES,

                Defendants.



CIVIL ACTION No. 3/16

ENTERED:



U.S. DISTRICT COURT
FILED
OCT 23 1963
S.D. OF N.Y.

STIPULATION

       It is stipulated by and between the undersigned
parties, by their respective attorneys, that:

       (1)  The parties consent that a Final Judgment
in the form hereto attached may be filed and entered by
the Court at any time after the expiration of thirty (30)
days following the date of filing of this Stipulation
without further notice to any party or other proceedings,
either upon the motion of any party or upon the Court's
own motion, provided that plaintiff has not withdrawn its
consent as provided herein;

       (2)  The plaintiff may withdraw its consent hereto
at any time within said period of thirty (30) days by serving
notice thereof upon the other parties hereto and filing said
notice with the Court;

       (3)  In the event plaintiff withdraws its consent
hereto, this Stipulation shall be of no effect whatever in

this or any other proceeding and the making of this Stipu-
lation shall not in any manner prejudice any consenting
party in any subsequent proceedings.

Dated: *October 22nd*, 1963

For the Plaintiff:

_William H. Orrick, Jr._,
Assistant Attorney General

_John H. Waters_

_W. D. Kilgore, Jr._

_William H. Rawson_

_Baddia J. Rashid_

_Charles F. B. McAleer_

Attorneys, Department of Justice

For the Defendant Association of Casualty and Surety
   Companies:

_Robert Y. Button_      _W. Maurice, Jr._

For the Defendants American Mutual Insurance Alliance and
   the National Association of Mutual Casualty Companies:

_Hugh B. Cox_

- 2 -

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,　　　　　)

　　　　　　　　Plaintiff,　　　　　　)

　　　　　v.　　　　　　　　　　　　)　　CIVIL ACTION No.

ASSOCIATION OF CASUALTY AND SURETY　)　　ENTERED:
COMPANIES, AMERICAN MUTUAL INSURANCE　)
ALLIANCE and the NATIONAL ASSOCIATION )
OF MUTUAL CASUALTY COMPANIES,　　　　)

　　　　　　　　Defendants.　　　)

FINAL JUDGMENT

　　　　Plaintiff, United States of America, having filed
its complaint herein on _____October 22nd_____, 1963, and
the plaintiff and the defendants, by their respective
attorneys, having consented to the entry of this Final Judg-
ment without admission by any party with respect to any issue
herein:

　　　　NOW, THEREFORE, before the taking of any testimony
herein, without trial or adjudication of any issue, and upon
such consent, as aforesaid, it is hereby

　　　　ORDERED, ADJUDGED AND DECREED as follows:

I

　　　　This Court has jurisdiction of the subject matter
hereof and the parties hereto and the complaint states a
claim upon which relief can be granted under Sections 1 and
3 of the Act of Congress of July 2, 1890, commonly known as
the Sherman Act, as amended.

II

　　　　The provisions of this Final Judgment shall be
binding upon each defendant and upon its officers, directors,

agents, servants, employees, committees, successors and assigns, and upon all other persons in active concert or participation with any defendant who shall have received actual notice of this Final Judgment by personal service or otherwise.

III

(A)  Each defendant is ordered and directed within 90 days from the entry of this Final Judgment to terminate, cancel and abandon the Independent Appraisal Plan, sometimes known as the Automotive Damage Appraisal Plan, which the defendants have established and are now administering, and each defendant is enjoined from reviving, renewing or again placing into effect that plan.

(B)  Defendants are ordered and directed within 90 days from the entry of this Final Judgment to send a written notice, in the form attached hereto as an exhibit, stating that all defendants have terminated, cancelled and abandoned the Independent Appraisal Plan (1) to each ap-praiser sponsored under the Plan, (2) to each member company, and (3) to each Local Casualty Insurance Claims Managers' Council.

IV

(A)  Each defendant is enjoined from placing into effect any plan, program or practice which has the purpose or effect of

(1)  sponsoring, endorsing or otherwise recom-mending any appraiser of damage to automotive vehicles;

(2)  directing, advising or otherwise suggesting that any person or firm do business or refuse to do

- 2 -

business with (a) any appraiser of damage to automotive
vehicles with respect to the appraisal of such damage,
or (b) any independent or dealer franchised automotive
repair shop with respect to the repair of damage to
automotive vehicles;

    (3)  exercising any control over the activities
of any appraiser of damage to automotive vehicles;

    (4)  allocating or dividing customers, territories,
markets or business among any appraisers of damage to
automotive vehicles; or

    (5)  fixing, establishing, maintaining or other-
wise controlling the prices to be paid for the appraisal
of damage to automotive vehicles, or to be charged by
independent or dealer franchised automotive repair
shops for the repair of damage to automotive vehicles
or for replacement parts or labor in connection there-
with, whether by coercion, boycott or intimidation or
by the use of flat rate or parts manuals or otherwise.

    (B)  Nothing in Subsection (A) above shall be
deemed to prohibit the furnishing to any person or firm of
any information indicating corrupt, fraudulent or unlawful
practices on the part of any appraiser of damage to automotive
vehicles or any independent or dealer franchised automotive
repair shop, so long as the furnishing of such information is
not part of a plan, program or practice enjoined in paragraphs
(1) through (5) of Subsection (A) above.  Each defendant shall
include in any report of such information an affirmative
statement that such report is not a recommendation and that
the person or firm to whom such report is furnished should
independently determine whether to do business with any

- 3 -

appraiser or automotive repair shop to which the report relates.

V

Defendants are ordered and directed within 90 days from the entry of this Final Judgment to cause the charter of each Local Casualty Insurance Claims Managers' Council to be amended so as to incorporate therein a declaration of policy that the Council shall not engage in any activity prohibited by Section IV of this Final Judgment.

VI

Nothing in Section IV of this Final Judgment shall be deemed to determine or constitute a waiver of any rights or immunities that defendants may have under the Act of Congress of March 9, 1945, commonly known as the McCarran-Ferguson Act.

VII

(A)  For the purpose of determining and securing compliance with this Final Judgment and subject to any legally recognized privilege, duly authorized representatives of the Department of Justice shall, upon written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to any defendant made to its principal office, be permitted

(1)  access during the office hours of such defendant to all books, ledgers, accounts, correspondence, memoranda and other records and documents in the possession or under the control of such

- 4 -

defendant relating to any of the matters contained
in this Final Judgment during which time counsel for
such defendant may be present; and

(2)   subject to the reasonable convenience of
such defendant and without restraint or interference
from it to interview officers or employees of such
defendant, who may have counsel present, regarding
any such matters.

(B)   Any defendant, on the written request of the
Attorney General or the Assistant Attorney General in charge
of the Antitrust Division, shall submit within a reasonable
time such reports in writing, under oath if requested, with
respect to any matters contained in this Final Judgment as
may be reasonably necessary for the purpose of the enforce-
ment of this Final Judgment.

(C)   No information obtained by the means provided
in this Section VII shall be divulged by any representative
of the Department of Justice to any person other than a duly
authorized representative of the Executive Branch, except
in the course of legal proceedings to which the United States
of America is a party for the purpose of securing compliance
with this Final Judgment or as otherwise required by law.

VIII

Jurisdiction is retained for the purpose of en-
abling any of the parties to this Final Judgment to apply to
this Court at any time for such further orders and directions
as may be necessary or appropriate for the construction or
carrying out of this Final Judgment or for the modification
or termination of any of the provisions thereof, and for

- 5 -

the enforcement of compliance therewith and punishment of violations thereof.

Dated:                      , 1963


_____United States District Judge_____

<u>EXHIBIT</u>

Special Bulletin

The United States Department of Justice on

_____, 1963, filed a complaint in the

United States District Court for the Southern District of

New York, alleging that the Association of Casualty and

Surety Companies, the American Mutual Insurance Alliance

and the National Association of Mutual Casualty Companies

had violated the antitrust laws.

On _____, 1963, a Consent Judgment

was entered, having been previously agreed upon by the

Department of Justice and by the attorneys for the three

named defendants.

The Judgment commands, among other things, that

the three defendants, their officers, directors, agents,

servants, employees, committees, successors and assigns

must, within ninety days of the entry of the Judgment,

terminate, cancel and abandon the Independent Appraisal

Plan, which has also been known as the Automotive Damage

Appraisal Plan. Accordingly, this is to notify you that

that plan is hereby terminated, that neither the three

defendants nor anyone acting on their behalf, including the

Local Casualty Insurance Claims Managers' Councils, will

hereafter sponsor in any way any appraiser of damage to

automotive vehicles, and that any existing sponsorship of

any such appraiser is hereby withdrawn.



# UNITED STATES DEPARTMENT OF JUSTICE

### WASHINGTON, D.C.

Address Reply to the
Division Indicated
and Refer to Initials and Number
WHO:WDK:
60-169-41

November 27th 1963

Mr. James E. Valeche
Clerk of the Court
United States District Court
    for the Southern District of New York
New York, N. Y.

              Re:  United States v. Association of Casualty and
                   Surety Companies, et al. (Civ. No. 63 Civ. 3106)

Dear Mr. Valeche:

    This is to advise you that plaintiff has not withdrawn
its consent to the entry of the Final Judgment attached to
the stipulation filed in the captioned case on October 23,
1963.

                              Sincerely yours,

                              WILLIAM H. ORRICK, JR.
                              Assistant Attorney General
                              Antitrust Division


                              W. D. Kilgore, Jr.

                         By:  William D. Kilgore, Jr.
                              Chief, Judgments & Judgment
                              Enforcement Section

Form No. 690

Civil
No. ..... 63 Civil 3106

# IN THE ........ DISTRICT ....... COURT

## OF THE UNITED STATES

FOR THE

SOUTHERN DISTRICT OF NEW YORK

...... of ..... NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

*vs.*

ASSOCIATION OF CASUALTY AND SURETY
COMPANIES; et al

Defendants

F I N A L   J U D G M E N T

John J. Galvay
Attorney, Department of Justice
Chief, New York Office, Antitrust
Division
42 Broadway, Room 500
New York, N.Y. 10004
Cortlandt 7-7100

Filed ........................., 19......

By ........................................... Clerk.

........................................... Deputy.

7-714

U.S. GOVERNMENT PRINTING OFFICE

UNITED STATES OF AMERICA,                )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )        CIVIL ACTION NO. 63 Civ. 3106
                                         )
ASSOCIATION OF CASUALTY AND SURETY       )        ENTERED:
COMPANIES, AMERICAN MUTUAL INSURANCE     )
ALLIANCE and the NATIONAL ASSOCIATION    )
OF MUTUAL CASUALTY COMPANIES,            )
                                         )
                    Defendants.          )

*U.S. DISTRICT COURT — FILED — NOV 27 1963 — S.D. OF N.Y.*

## FINAL JUDGMENT

Plaintiff, United States of America, having filed its complaint

herein on __October 23__, 1963, and the plaintiff and the defendants,

by their respective attorneys, having consented to the entry of this

Final Judgment without admission by any party with respect to any issue

herein;

NOW, THEREFORE, before the taking of any testimony herein, without

trial or adjudication of any issue, and upon such consent, as aforesaid,

it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

I

This Court has jurisdiction of the subject matter hereof and the

parties hereto and the complaint states a claim upon which relief can

be granted under Sections 1 and 3 of the Act of Congress of July 2, 1890,

commonly known as the Sherman Act, as amended.

II

The provisions of this Final Judgment shall be binding upon each

defendant and upon its officers, directors, agents, servants, employees,

committees, successors and assigns, and upon all other persons in active

concert or participation with any defendant who shall have received actual notice of this Final Judgment by personal service or otherwise.

III

(A) Each defendant is ordered and directed within ninety (90) days from the entry of this Final Judgment to terminate, cancel and abandon the Independent Appraisal Plan, sometimes known as the Automotive Damage Appraisal Plan, which the defendants have established and are now administering, and each defendant is enjoined from reviving, renewing or again placing into effect that plan.

(B) Defendants are ordered and directed within ninety (90) days from the entry of this Final Judgment to send a written notice, in the form attached hereto as an exhibit, stating that all defendants have terminated, cancelled and abandoned the Independent Appraisal Plan (1) to each appraiser sponsored under the Plan, (2) to each member company, and (3) to each Local Casualty Insurance Claims Managers' Council.

IV

(A) Each defendant is enjoined from placing into effect any plan, program or practice which has the purpose or effect of

(1) sponsoring, endorsing or otherwise recommending any appraiser of damage to automotive vehicles;

(2) directing, advising or otherwise suggesting that any person or firm do business or refuse to do business with (a) any appraiser of damage to automotive vehicles with respect to the appraisal of such damage, or (b) any independent or dealer franchised automotive repair shop with respect to the repair of damage to automotive vehicles;

(3) exercising any control over the activities of any appraiser of damage to automotive vehicles;

(4) allocating or dividing customers, territories, markets or business among any appraisers of damage to automotive vehicles; or

- 2 -

(5) fixing, establishing, maintaining or otherwise controlling the prices to be paid for the appraisal of damage to automotive vehicles, or to be charged by independent or dealer franchised automotive repair shops for the repair of damage to automotive vehicles or for replacement parts or labor in connection therewith, whether by coercion, boycott or intimidation or by the use of flat rate or parts manuals or otherwise.

(B) Nothing in Subsection (A) above shall be deemed to prohibit the furnishing to any person or firm of any information indicating corrupt, fraudulent or unlawful practices on the part of any appraiser of damage to automotive vehicles or any independent or dealer franchised automotive repair shop, so long as the furnishing of such information is not part of a plan, program or practice enjoined in paragraphs (1) through (5) of Subsection (A) above. Each defendant shall include in any report of such information an affirmative statement that such report is not a recommendation and that the person or firm to whom such report is furnished should independently determine whether to do business with any appraiser or automotive repair shop to which the report relates.

V

Defendants are ordered and directed within ninety (90) days from the entry of this Final Judgment to cause the charter of each Local Casualty Insurance Claims Managers' Council to be amended so as to incorporate therein a declaration of policy that the Council shall not engage in any activity prohibited by Section IV of this Final Judgment.

VI

Nothing in Section IV of this Final Judgment shall be deemed to determine or constitute a waiver of any rights or immunities that defendants may have under the Act of Congress of March 9, 1945, commonly known as the McCarran-Ferguson Act.

- 3 -

VII

(A)  For the purpose of determining and securing compliance with this Final Judgment and subject to any legally recognized privilege, duly authorized representatives of the Department of Justice shall, upon written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to any defendant made to its principal office, be permitted

(1)  access during the office hours of such defendant to all books, ledgers, accounts, correspondence, memoranda and other records and documents in the possession or under the control of such defendant relating to any of the matters contained in this Final Judgment during which time counsel for such defendant may be present; and

(2)  subject to the reasonable convenience of such defendant and without restraint or interference from it to interview officers or employees of such defendant, who may have counsel present, regarding any such matters.

(B)  Any defendant, on the written request of the Attorney General or the Assistant Attorney General in charge of the Antitrust Division, shall submit within a reasonable time such reports in writing, under oath if requested, with respect to any matters contained in this Final Judgment as may be reasonably necessary for the purpose of the enforcement of this Final Judgment.

(C)  No information obtained by the means provided in this Section VII shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Executive Branch, except in the course of legal proceedings to which the United States of America is a party for the purpose of securing compliance with this Final Judgment or as otherwise required by law.

- 4 -

VIII

Jurisdiction is retained for the purpose of enabling any of the
parties to this Final Judgment to apply to this Court at any time for
such further orders and directions as may be necessary or appropriate for
the construction or carrying out of this Final Judgment or for the
modification or termination of any of the provisions thereof, and for
the enforcement of compliance therewith and punishment of violations
thereof.

Dated: Nov. 27th , 1963

United States District Judge

JUDGMENT ENTERED 11/27/63

James E. Valeche
Clerk

EXHIBIT

Special Bulletin

The United States Department of Justice on _____,
1963, filed a complaint in the United States District Court for the
Southern District of New York alleging that the Association of Casualty
and Surety Companies, the American Mutual Insurance Alliance and the
National Association of Mutual Casualty Companies had violated the
antitrust laws.

On _____, 1963, a Consent Judgment was
entered, having been previously agreed upon by the Department of
Justice and by the attorneys for the three named defendants.

The Judgment commands, among other things, that the three
defendants, their officers, directors, agents, servants, employees,
committees, successors and assigns must, within ninety days of the
entry of the Judgment, terminate, cancel and abandon the Independent
Appraisal Plan, which has also been known as the Automotive Damage
Appraisal Plan. Accordingly, this is to notify you that that plan is
hereby terminated, that neither the three defendants nor anyone acting
on their behalf, including the Local Casualty Insurance Claims Managers'
Councils, will hereafter sponsor in any way any appraiser of damage to
automotive vehicles, and that any existing sponsorship of any such
appraiser is hereby withdrawn.

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

under the seal of the National Archives and Records Administration, that the attached reproduction(s) is

a true and correct copy of documents in his custody.



| SIGNATURE | |
|---|---|
| *Lori Cox-Paul* (signature) | |
| NAME<br>Lori Cox-Paul | DATE<br>12-15-2015 |
| TITLE<br>Director of Archival Operations | |
| NAME AND ADDRESS OF DEPOSITORY<br>National Archives at Kansas City<br>400 West Pershing Road<br>Kansas City, MO 64108 | |

NA FORM 13040 (10-86)